# Olmsted's Case.

*Attorneys-at-law—Admission to bar—Rules of court—Rule as to location of principal office—Practice, C. P.*

1. The Pennsylvania statutes dealing with admission to the bar, involve a judicial rather than a legislative subject-matter.

2. Such statutes will be judicially recognized as valid, so far as, but no further than, the legislation involved does not encroach on the right of the courts to say who shall be privileged to practice before them and under what circumstances persons shall be admitted to that privilege.

3. A court is justified in taking reasonable steps to expedite properly its business and to prevent undue congestion of its calendars.

1928.]            Syllabus—Opinion of Court below.

4. A rule of court is valid which provides that an applicant for admission to the bar shall make "a formal declaration in writing that he intends permanently to practice in that county, and within three months to open his principal office there."

5. The certificate of the Supreme Court establishing that the applicant is learned in the law and of good moral character, prevents the lower court from examining the applicant as to his qualification in these respects, but it is for the lower courts alone to determine what else they will require from the applicant before admitting him to practice in such courts.

6. The lower courts may reject an applicant who has a certificate from the Supreme Court, if it appears that he has ceased to be a person of good moral character since such certificate was issued, or if it is made to appear that the Supreme Court was misled as to his character when the certificate was issued.

7. Quære, whether mandamus or a rule to show cause is the proper remedy to compel a local examining board to issue a certificate to an applicant for admission to the bar.

Argued January 9, 1928.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 115, Jan. T., 1928, by Allen S. Olmsted, 2d., from order of C. P. Delaware Co., Dec. T., 1926, No. 1238, discharging rule to show cause why certificate of approval should not be issued by the Board of Law Examiners on an application for admission to the bar, in case of Allen S. Olmsted, 2d.   Affirmed.

Rule on the Board of Law Examiners to show cause why they should not issue certificate for admission to the bar.   Before FRONEFIELD, P. J., and BROOMALL, J.

The opinion of the Supreme Court states the facts.

The following statutes relate to the subject of admission to the bar:

Act of May 22, 1722, 1 Sm. L. 145: "XXVIII: That there may be a competent number of persons of an honest disposition, and learned in the law, admitted by the Justices of the said respective courts, to practice as attorneys there, who shall behave themselves justly and faithfully in their practice......"

Act of April 14, 1834, P. L. 341, 354, entitled, "An act relative to the organization of the Courts of Justice." Section 68: "The judges of the several courts of record of this Commonwealth shall respectively have power to admit a competent number of persons of an honest disposition, and learned in the law, to practice as attorneys in their respective courts."

Act of May 7, 1885, P. L. 16, entitled, "An act to further regulate the admission of attorneys and counsellors at law to practice in the several courts of this Commonwealth." Section 1: "That from and after the passage of this act, it shall be lawful for any attorney and counsellor at law, who shall have been duly admitted to practice in any court of common pleas and in the Supreme Court of this Commonwealth, to be admitted to practice in any other court of this Commonwealth, upon motion simply, and filing, together with his certificate of admission to the Supreme Court, a certificate of the presiding judge of the county from whence he came, setting forth that he is of reputable professional standing and of unobjectionable character." Section 2: "That all laws or parts of laws inconsistent herewith be and the same are hereby repealed, and any rule, usage or practice to the contrary is hereby declared unlawful and void." This act was specifically repealed April 7, 1927, P. L. 166.

Act of May 19, 1887, P. L. 131, amending the Act of May 7, 1885, section 1: "That from and after the passage of this act, any attorney and counsellor at law, who shall have been admitted to practice in any court of common pleas and in the Supreme Court of this Commonwealth shall be admitted to practice in any other court of this Commonwealth upon motion simply, by exhibiting to the court a certificate of admission to the Supreme Court and filing a certificate of the presiding judge of the county or district from which he came, setting forth that he is of reputable professional standing and of unobjectionable character. Upon such admis-

sion, the clerk of the court shall keep a record thereof on the minutes of such court." This act was specifically repealed April 27, 1927, P. L. 356.

Act of May 8, 1909, P. L. 475, as to admissions to the Supreme Court operating on other courts, section 1: "That admission now had or that may hereafter be had to practice as an attorney-at-law in the Supreme Court of this Commonwealth shall of itself, without more, operate as an admission of such attorney as attorney-at-law in every other court of this Commonwealth, without any other or further action by such courts or by such attorney."

Act of April 18, 1919, P. L. 73, amending section 1, of Act of May 8, 1909, supra: "That admission now had or that may hereafter be had to practice as an attorney-at-law in the Supreme Court of this Commonwealth shall qualify such attorney for admission to practice as attorney-at-law in every other court of this Commonwealth, and shall operate as an admission of such attorney in any other court of this Commonwealth upon his filing in the office of the prothonotary of said court a certificate of admission in the Supreme Court and the payment to such prothonotary of the fee of one dollar."

Act of April 20, 1921, P. L. 151, amending Act of 1919, supra, by adding "or clerk" to every designation of "prothonotary."

Act of July 11, 1923, P. L. 1069, amending Acts of 1909, 1919, and 1921, supra, section 1: "That admission now had or that may hereafter be had to practice as an attorney-at-law in the Supreme Court of this Commonwealth shall, upon approval of the local examining board, qualify such attorney for admission to practice as an attorney-at-law in every other court of this Commonwealth, and upon such approval shall operate as an admission of such attorney in any other court of this Commonwealth upon his filing, in the office of the prothonotary or clerk of said court, a certificate of admis-

sion to the Supreme Court and a certificate of approval from the local examining board and the payment to such prothonotary or clerk of a fee of one dollar."

The following cases were decided under the above acts, except the last three,—the Acts of 1919, 1921, and 1923: Com. ex rel. Brackenridge v. Judges, 1 S. & R. 187; Kilgore's Case, 14 W. N. C. 466; Kilgore's Case, 17 W. N. C. 562; Kilgore's Case, 17 W. N. C. 563; Splane's Petition, 123 Pa. 527; Hoopes v. Bradshaw, 231 Pa. 485; Street v. Maynard, 19 Pa. Dist. R. 630; Martin v. Travelers Ins. Co., 25 Pa. Dist. R. 455.

Rule discharged.    Allen S. Olmsted, 2d., appealed.

*Error assigned,* inter alia, was order, quoting record.

*Allen S. Olmsted,* with him *Earl G. Harrison* and *Maurice Bower Saul,* for appellant.—In England admission to the bar is regulated by the Inns of Court. In this country it has been regulated by the courts themselves: Brackenridge v. Judges, 1 S. & R. 187; Kilgore's Case, 17 W. N. C. 475; Splane's Petition, 123 Pa. 527.

Instead of merely giving a member of the bar of this court a right to be admitted to the lower courts, as under the Act of May 19, 1887, P. L. 131, the Act of May 8, 1909, P. L. 475, made him ipso facto a member of such courts: Hoopes v. Bradshaw, 231 Pa. 485.

Attorneys admitted in this court before 1919 are entitled under the Act of 1909, to practice in all the courts of the Commonwealth.

The rule of court requiring a principal office in Delaware County, is invalid: Byrne's Account, 17 Pa. Dist. R. 427.

*Albert J. Williams,* for appellee, cited: Taylor v. Sattler, 6 S. C. 229; Summerson v. Hicks, 142 Pa. 344.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 30, 1928:

Allen S. Olmsted, 2d, a member of the Philadelphia Bar and a resident of Delaware County, desiring to become enrolled as a member of the Delaware County Bar, applied to the board of law examiners of that county for a certificate of approval. The board, after expressing itself as satisfied with the applicant's general qualifications, refused the certificate on the sole ground that he had not stated an intention to open and maintain his principal office in Delaware County as required by the rules of the court of common pleas of that district. Subsequently, Mr. Olmsted's admission was moved in open court; the petition in support of this motion recited all the other essential facts, and also that the applicant would have an office at his residence in Delaware County, designating that place and a post office box as addresses in the county where papers might be served on him. The court below granted a rule on its board of law examiners to show cause why that body should not approve the application; the rule was discharged after a hearing, an exception was allowed, and this appeal followed.

While the opinion in support of the order appealed from suggests that "it may well be doubted whether the procedure......should not have been by petition for a writ of alternative mandamus [against the local examining board], instead of by an application for a rule to show cause," yet the case was there disposed of in the form in which it was brought before the court; and no procedural question of any kind is raised by either side on this appeal.

The court rule here involved was adopted March 7, 1904; it provides that an applicant for admission to the bar of Delaware County shall make a "formal declaration in writing that he intends permanently to practice in that county, and within three months to open his principal office there, which certificate shall be filed

by the board [of law examiners] with its report." The validity of this rule of court is the real question before us for decision. In its opinion sustaining the action of the board and construing the rule, the court below said, inter alia: "The board of law examiners has neither power nor authority to disregard [our] rule of court, nor of its own motion to modify it, and, as long as the rule stands unchanged, the board......must observe it; the action of the board in declining to accept the papers of the applicant, without such formal declarations in writing [as required by the rule], was the only action that [it] could properly take." This raises the main point in the present case: Is the rule of the court below, under which appellant was refused admission as a regularly enrolled member of the bar of that tribunal, a valid regulation which he had to meet, or was he legally entitled to be so enrolled notwithstanding his noncompliance with that rule?

The court below did not question the qualifications of the applicant from the standpoint of legal education and character; on the contrary, its opinion states: "It cannot be held that the local examining board is to review the action of the Supreme Court in determining the qualifications of the applicant for admission to that court, nor to suggest that while he may be......qualified to practice before that tribunal, he has not sufficient knowledge of the law to practice in [a lower] court. The mere statement of any such proposition is sufficient, we think, to show its absurdity......The certificate from the Supreme Court establishing that the applicant is......learned in the law,......as we understand it, prevents the other courts from examining as to his qualifications in this one respect. In all other respects, however, it is for the [lower] courts alone to determine what else they will require from the applicant before admitting him to practice as a member of the bar of such courts." These views are not at variance with the existing system controlling admissions to the bar in Penn-

sylvania, except that, since the rules adopted by us on
September 30, 1927, setting up machinery to inquire
into the personal character of candidates for admission
to the bar of the Supreme Court, membership at the
bar of this court is sufficient in itself to show good char-
acter up to the date of such admission, though, as said
by us in Hoopes v. Bradshaw, 231 Pa. 485, 491, "any
[other] court may refuse to permit [a member of the
bar of the Supreme Court] to practice before it upon
being duly informed that he no longer possesses an
'honest disposition,'" or, in other words, a good moral
character. To which we now add: or if such other court
certifies of record either a reason to believe that the
Supreme Court was misled as to the candidate's real
character, or other good and sufficient reasons why he
should not be enrolled as a member of the local bar to
which he seeks admission.

Of course, one admitted to the bar has a public office
conferred on him (Austin's Case, 5 Rawle 191, 202),
and the people as a whole are interested in all who shall
occupy such offices, but the power to regulate that mat-
ter, for their benefit, belongs in Pennsylvania to the
judicial department of government (Hoopes v. Brad-
shaw, 231 Pa. 485, 487), not to the legislative; and the
various statutes dealing with admissions to the bar
which have been passed from time to time (as shown by
the Reporter's notes published in connection herewith),
involve a judicial, rather than a legislative, subject-mat-
ter. In Splane's Petition, 123 Pa. 527, 540, we said
that the Act of May 19, 1887, P. L. 131, was an uncon-
stitutional interference with a judicial prerogative; in
Hoopes v. Bradshaw, however, this assertion was held
to be obiter dictum, since it was unnecessary to go that
far in order to decide the Splane Case. The true rule
is as follows: Statutes dealing with admissions to the
bar will be judicially recognized as valid, so far as, but
no further than, the legislation involved does not en-
croach on the right of the courts to say who shall be

priviliged to practice before them, and under what cir-
cumstances persons shall be admitted to that privilege.
Acts of this kind have been construed in the past in such
a way as to bring them within this rule, rather than as
being unconstitutional.   We shall not discuss in detail
the various statutes referred to above; for none of them
can control the courts in performing the purely judicial
act of deciding who shall enjoy the privilege of practic-
ing before them, though, so far as such statutes do not
encroach on the prerogative of the judicial department
of the government to regulate admissions to the bar,
the courts have heretofore properly heeded them. \ For
instance, in the Hoopes Case (pp. 490-491) we said of
the Act of May 8, 1909, P. L. 475, that it "merely de-
clared what effect shall be given to the rules [and]
orders of this court," as to admissions to the bar, which
rules and orders we had "the inherent power to make,
independently of the legislative branch of the govern-
ment," adding that the act in question, when thus con-
strued, "neither encroaches upon nor interferes with
[powers] exercisable by the judiciary alone," and, there-
fore, we did not regard it as "an unconstitutional inter-
ference with the exercise of a judicial function."   To
this extent we sustained the statute then before us, be-
cause, as there explained, instead of being an encroach-
ment on the judiciary, it aided the highest court of the
State to enforce its rules and orders.   But, while thus
upholding the statute, we said, in no uncertain terms,
that there are "certain functions of the lower courts"
with which the legislature cannot interfere, one of them
being the power to adopt rules to facilitate the proper
dispatch of the business of such tribunals, instancing
regulations relating to "the service of notices and pa-
pers."   In this connection, we particularly said that,
when one who does not intend to establish an office in
a county to whose courts he would be admitted applies
for such admission, "he is not to expect practitioners
having established offices within [the county] to be sub-

jected to annoyance and inconvenience in the service of [papers] upon him." Then we said, in effect, that the adoption of a rule to minimize such annoyance and inconvenience was "within the power of the court" even if the rule in question affected the right to be admitted to the bar of such court, and this notwithstanding we were then considering a statute which, if literally construed (assuming no limitation on the power of the legislature over the subject matter involved), apparently provided to the contrary.

The rule here under attack is consistent with and does not unduly extend the principle of the Hoopes Case. As said in the opinion disposing of appellant's application, the court below was "justified in taking such reasonable steps as suggest themselves to expedite properly its business and to prevent undue congestion of its calendars." To show that the rule under discussion was "calculated" to advance the ends just mentioned, the opinion states a view which conceivably may be taken, that an attorney will naturally give preference to business which originates in the county where his principal office is located and the bulk of his business is conducted, "rather than to business originating in [some other county] and conducted in [its] courts, where a conflict between the two arises, as, for instance, where his attendance may be required in different cases in the different counties at the same time." The court further says that it has had frequent illustration of such results, and reasonably adds that, while "conditions of this sort may at times arise,......no matter what rules are adopted," yet, if it has to admit to its bar "as regular practitioners" all members of the bars of adjoining counties who have been admitted to the bar of the Supreme Court, and who may choose to present themselves for such admission, it might expect a condition of congestion of its calendars, and of inability to proceed rapidly with the trial of cases, to become permanent instead of occasional.

After considering the various statutes on the subject in hand, the cases thereunder mentioned in the notes of the Reporter, also the fact of separate county bars long existing in Pennsylvania, and the prevailing plan of judicially regulated state examination of candidates for admission to the bar, we find the rule of the court below, as construed by it, to be neither invalid nor out of harmony with our present system; finally, we find no error in the disposition made by that tribunal of appellant's petition for enrollment as a member of the Delaware County Bar.

While we shall not attempt to discuss all the cases above referred to, it may be well to state that, in our opinion, none of them contains any ruling which at this day requires a decision different from the conclusion just stated. Interesting notes on the point of admission to the bar being a judicial rather than a legislative act will be found in 10 L. R. A. (N. S.) 289, and in 17 W. N. C. 563; the latter contains several additional Pennsylvania cases on the general subject here involved.

The order appealed from is affirmed.